

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Shelly S. Glenn*
*Special Assistant United States Attorney*
*Shelly.Glenn@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4893*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

February 5, 2016

Joseph A. Balter, Esquire
Office of the Federal Public Defender
100 South Charles Street
Tower II, 9th Floor
Baltimore, MD 21201

      Re:    Plea Agreement in the Case of
           *United States v. Howard Downey*, CCB-15-0399

Dear Mr. Balter:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to Howard Downey ("the Defendant") by the United States Attorney's Office for the District of Maryland ("this Office"). **This plea is tendered pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. The agreed upon sentence is between 87 months and 97 months imprisonment combined on Counts One and Seven of the Superseding Indictment filed July 30, 2015**. If the Defendant accepts this offer, please execute it and have him execute it in the spaces provided below. If this offer has not been accepted by close of business on February 22, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

**Offenses of Conviction**

      1.    The Defendant agrees to plead guilty to Counts One and Seven of the Superseding Criminal Indictment filed against him on July 30, 2015. Those counts charge the Defendant with Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count One) and Tampering in violation of 18 USC § 1512(c)(1) (Count Seven). The Defendant admits that he is, in fact, guilty of those offenses and will so advise the Court.

**Elements of the Offenses**

      2.    The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

<u>Count One – 18 U.S.C. § 1951(a)</u>

That on or about March 7, 2015, in the District of Maryland,

    a.    The defendant obstructed, delayed, or affected commerce or the
          movement of any article or commodity in commerce;
    b.    By robbery or extortion, or attempts or conspiracy to do so.

<u>Count Seven—18 U.S.C. § 1512(c)(1)</u>

That on or about March 30, 2015, in the District of Maryland,

    a.    The defendant knowingly, intentionally, and corruptly altered,
          destroyed, mutilated, and concealed and attempted to alter, destroy, .
          mutilate and conceal;
    b.    A record, document or other object;
    c.    With the intent to impair the object's integrity or availability for
          use;
    d.    In an official proceeding as defined in 18 USC § 1515.

### Penalties

        3.    The maximum sentences provided by statute for the offenses to which the
Defendant is pleading guilty are as follows:

    a.    <u>Counts One-- 18 U.S.C. § 1951(a)</u>:  20 years imprisonment, followed
          by a term of supervised release of up to three years, and a fine of
          $250,000.

    b.    <u>Count Seven-- 18 U.S.C. § 1512(c)(1)</u>:  20 years imprisonment,
          followed by a term of supervised release of up to 3 years, and a fine of
          $250,000.

    c.    In addition, the Defendant must pay $100 per count as a special
          assessment pursuant to 18 U.S.C. § 3013, which will be due and
          should be paid at or before the time of sentencing.  This Court may
          also order him to make restitution pursuant to 18 U.S.C. §§ 3663,
          3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be
          payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the
          Court orders otherwise.  The Defendant understands that if he serves a
          term of imprisonment, is released on supervised release, and then

---

[1]        Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that
remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine,
unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

**Waiver of Rights**

4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

   f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

   g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

   h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.

### Advisory Sentencing Guidelines Apply

   5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551–3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

   6. This Office and the Defendant understand, agree and stipulate to the following Statement of Facts, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Statement of Facts

Count One (March 7th):

On March 7, 2015, at approximately 4:41 pm, the Cricket Wireless store, located at 2232 E. Monument Street, in Baltimore City, in the District of Maryland, was robbed at gunpoint. Howard Downey, ("the Defendant") entered the business, walked directly to the counter, pulled a dark colored revolver out of his left coat pocket and brandished it at the victim, an employee of the business. The defendant demanded money from the cash registers. In fear of being harmed, the victim gave the Defendant money from both cash registers, totaling approximately $500. The Defendant then instructed the victim to hand over the store's telephone and kneel down. The victim complied and the Defendant fled on foot to a van waiting outside. The incident was captured on surveillance video from both inside and outside the store.

Detectives were also able to recover video footage from nearby businesses in this and an additional robbery committed by the defendant. In the footage, the defendant Howard Downey, is seen exiting from an older purple Dodge caravan, walk towards the respective victim stores, and return to the same van minutes later, after completing the robberies. The license tag on the van was visible in the footage; further investigation led detectives to the house where Downey was residing. (The driver of the van was not visible in the footage.) Detectives obtained and executed a search warrant at Downey's residence on March 26, 2015 and recovered a black coat with a grey hoodie, consistent with what the defendant was wearing in the surveillance video from the robberies. Also recovered were a black knit hat, blue knit gloves, and the defendant's phone. A search warrant executed on his phone revealed text messages from Howard Downey subsequent to one of the robberies. During the text messages, the defendant referred to himself and his cohort/getaway driver as "Bonnie and Clyde."

On March 27, 2015, the defendant was arrested, advised of his rights and agreed to speak with detectives. He confessed to the March 7th robbery of the Cricket Wireless store located at 2232 E. Monument Street, in Baltimore City. He would not, however, reveal the identity of the driver of the van nor the whereabouts of the gun used in the robberies.

The Cricket Wireless store sells items which travel in interstate commerce. As a result of the Defendant's actions, interstate commerce was impacted, delayed, obstructed, and affected, as the store was closed during investigation of the robbery and suffered financial loss therefrom.

Count Seven:

Subsequent to his arrest for on March 27, 2015, the defendant spoke with a co-conspirator (hereinafter CC1), via telephone from the Baltimore City jail. Downey and CC1 were conspiring to obstruct justice by hiding the firearm Downey used in the robberies from law enforcement. This phone call was recorded, as per protocol, which is explained at the beginning of each phone call made from the jail. On one such recorded phone call between the defendant and CC1 on March 30, 2015, the defendant explained to CC1 that CC1 must get rid of the gun. The defendant continues by instructing CC1 to retrieve the gun from where it was then hidden and "get rid of it." CC1 followed the defendant's orders, retrieved the gun and hid it at CC1's friend's house. The next day on March 31, 2015, CC1 reported to Howard Downey via another recorded phone call, "we can't talk about it too much over the phone, but I took care of it, and "it's gone, it's gone."

On April 8, 2015, detectives conducted further investigation that revealed that CC1 had taken the gun to her friend's (hereinafter CC2) home. Subsequently, police secured CC2's house and obtained and executed a search warrant therein. A dark colored revolver, as described by the robbery victims, was recovered. The defendant agrees that the evidence would prove that CC1, hid the gun in CC2's house at the defendant's direction. The gun was determined to be a Titan Tiger .38 revolver, serial number 0848780.

<u>Related Conduct</u>

The parties agree that the following facts establish that the Defendant committed an additional two armed robbery to which he confessed. Therefore, the guidelines level applicable to Counts One and Seven will be calculated as if the Defendant were convicted of all of three Hobbs Act robberies pursuant to U.S.S.G. Section 1B1.2 (c). The two additional armed robberies are as follows:

On March 12, 2015 at approximately 1:23 pm, the Metro PCS store at 2652 W. Patapsco Avenue, Baltimore City, Maryland, was robbed at gunpoint. Police responded in reference to a panic alarm and met with the victim, who is the owner of the store.  He advised police that a white male suspect, wearing a grey hoodie and black coat, armed with a handgun entered the store and approached the counter. The man showed a handgun in his waistband and said, "take out all the money from the register and put it in a bag," while pulling the handgun partially out. Fearing for his safety, the owner took approximately $500 US currency from the register drawer and placed it onto the counter. The man told both the owner and another employee who was present, to go into the bathroom. They complied and the suspect fled the store on foot, turning toward Lorena Ave. This incident was recorded by security cameras inside the store.  The robber was ultimately identified as the defendant, Howard Downey, who confessed to committing this armed robbery.

On March 13, 2015, at approximately 6:07 pm, the Metro PCS store at 2228 E. Monument Street was robbed at gunpoint.  Store employees indicated a white male, later identified as the defendant, wearing a grey hoodie and black coat, displayed a black revolver and stated, "give me all the money." The employees, fearing for their safety, complied handing over approximately $500.00 from the store cash registers.  The defendant fled the store on foot. On March 27, 2015, after being fully advised of and waiving his rights, the defendant confessed to committing this robbery as well.

The Metro PCS Stores sell items which travel in interstate commerce.  As a result of the Defendant's actions, interstate commerce was impacted, delayed, obstructed, and affected, as the stores were closed during investigation of the armed robberies and suffered financial losses.

    b.      Guideline Stipulations

<u>Count One—March 7, 2015</u>
The **base offense level for Count One is 20** pursuant to U.S.S.G. § 2B3.1(a). Five additional levels are added because a firearm was brandished.  U.S.S.G. § 2B3.1(b)(2)(C). The **final adjusted base offense level for each count is therefore 25.**

Count Seven—March 30, 2015
The **base offense level is 14** pursuant to U.S.S.G. § 2J1.2. There are no adjustments or enhancements. The **final base offense level is therefore 14**.

Counts Three and Five:  The Metro PCS Stores—
March 12th and 13th, 2015
The **base offense level for Counts Three and Five is 20** pursuant to U.S.S.G. § 2B3.1(a). Five additional levels are added because a firearm was brandished. U.S.S.G. § 2B3.1(b)(2)(C).  The **final adjusted base offense level is therefore 25.**

      c.     Pursuant to U.S.S.G. § 3D1.4, three (3) additional levels are added to the offense with the highest offense level (25), for a combined base offense level of **28**.

      d.     Acceptance of Responsibility

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. Section 3E1.1(b) for an additional 1-level decrease in recognition of your client's acceptance of personal responsibility for his conduct. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or  attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.  **Therefore, final base offense level is therefore 25.**

      The parties agree that a sentence of **between 87--97 months** of imprisonment, as set forth in paragraph 9 herein, is a reasonable and appropriate sentence, taking into consideration the factors set forth in 18 U.S.C. § 3553(a), the related conduct and the charged offenses in violation of 18 U.S.C. § 924(c),[2] and is sufficient but not greater than necessary to achieve the purposes of sentencing set forth in section 3553(a).

      7.     The parties agree that the pursuant to the Pre-Plea Criminal History prepared by the United States Pretrial Services Officer that the Defendant's criminal history category is III.

      8.     Other than as set forth above, this Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics,

---

[2] The parties have also taken into consideration the possible state charge(s) of Use of a Handgun in a Crime of Violence, Maryland Criminal Law Article § 4-204, which have been dismissed.

sentencing guidelines factors, or potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Rule 11(c)(1)(C) Plea

9. **The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that an aggregate sentence of between 87-97 months of imprisonment in the custody of the Bureau of Prisons is the appropriate disposition of this case.** This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

### Obligations of the United States Attorney's Office

10. The Defendant and this Office agree that during the Defendant's sentencing hearing, this Office will dismiss all remaining charges and indictments that have been filed against the Defendant.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

### Restitution

12. The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. Sections 3663 and 3663A and Sections 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

### Forfeiture of Firearm and Ammunition

13. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following firearm:

A Titan Tiger .38 caliber revolver, serial number 0848780.

## Waiver of Appeal

14.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

   a.   The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

   b.   The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any sentence greater than **97 months imprisonment** combined; (ii) and this Office reserves the right to appeal any sentence less than **87 months imprisonment** combined.

   c.   Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

   d.   The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

15.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case.  In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who

prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

16. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. In the event the Court rejects this Rule 11(c)(1)(C) plea agreement, pursuant to Rule 11(c)(5)(C), the Defendant will be informed that he may withdraw his plea. If he persists in the guilty plea thereafter, the Defendant understands that the disposition of the case may be less favorable than that contemplated by this agreement. The Defendant understands that neither this Office, nor his attorney, nor the Court, can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

17. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, along with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Shelly Stickell Glenn
Special Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-4-16
Date

_Howard Downey_
Howard Downey

I am the Defendant's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3-4-16
Date

Joseph A. Balter, Esq.